UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEVIN GRIFFIN,

               Plaintiff,                    Case No. 2:17-cv-12204
                                                  District Judge Mark A. Goldsmith
v.                                            Magistrate Judge Anthony P. Patti

WILLIAM MALATINSKY,
MD, and AURELIO
ROSARIO,

               Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION TO DISMISS OR, IN THE ALTERNATIVE MOTION FOR
SUMMARY JUDGMENT (DE 21) AND ORDER DENYING AS MOOT
DEFENDANTS' MOTION FOR EXTENSION OF TIME TO FILE AN
ANSWER (DE 18)**

**I.**     **RECOMMENDATION**:  The Court should grant Defendants' motion to

dismiss or, in the alternative, motion for summary judgment.  (DE 21.)  In addition,

Defendants' motion to extend the time to answer (DE 18) is denied as moot.

**II.**     **REPORT**

     **A.**     **Background**

     Plaintiff, Nevin Griffin, is an inmate currently incarcerated at the U.S.

Penitentiary in Terre Haute, Indiana (USP Terre Haute) who is proceeding *in

forma pauperis*.  Plaintiff brings this *Bivens* action against Defendants William

Malatinsky, M.D. and Aurelio Rosario, alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  Dr. Malatinsky was the clinical director at FCI Milan during the times relevant to this complaint, and Mr. Rosario was employed at FCI Milan as a Mid-Level Practitioner (MLP), which Defendants explain is analogous to a physician assistant.

According to Plaintiff's complaint, prior to being incarcerated, he was suffering from a pulmonary embolism and acute recurrent thromboembolic disease and was taking a prescription blood thinner, Warfarin, among other medications, since "at least" December 4, 2012.  (DE 1, ¶ 5.)  He continued to receive Warfarin after his incarceration at FCI Milan starting on November 22, 2013, until December 2013, when Dr. Malatinsky discontinued the prescription.  (*Id.*) According to Plaintiff's medical records, he reported to Dr. Malatinsky on December 3, 2013 that he "was suppose[d] to take Coumadin for 3-6 months" and "[h]e is waiting for someone to stop it."  (DE 21-3 at 12.)  On December 4, 2013, Dr. Malatinsky discontinued Plaintiff's Coumadin (Warfarin) prescription because he had been on it for 12 months, and the Federal Bureau of Prisons (BOP) Clinical Practice Guideline, Anticoagulation Protocol, called for discontinuing the medication after three months for a patient with a history of pulmonary embolism. (DE 21-3 at 11; DE 21-4, ¶ 6; DE 21-5.)

Plaintiff alleges, contrary to his medical records, that he *objected* to discontinuing the medication, asserting that medical specialists had warned him not to discontinue the drug without tests, and that Dr. Malatinsky stated "that he did not care what the specialists had said, and 'To Hell with Them,' he was discontinuing the Warfarin." (DE 1, ¶ 5.)  Plaintiff contends that Dr. Malatinsky stated that that Warfarin was "too expensive" and when Plaintiff continued to protest, he ordered Plaintiff to leave his office.  (*Id.*)  Plaintiff's medical records show that he continued to be evaluated and treated by various physicians, including Dr. Malatinsky, and that he did not report any issues related to his pulmonary embolism or other complications regarding discontinuance of Warfarin.  (DE 21-3 at 1-10; DE 21-6 at 49-50.)

Plaintiff contends that approximately 15 months later, on March 24, 2015, upon awaking in his cell, he began to suffer from severe chest pain with shortness of breath, sweating and other "associated symptoms."  (DE 1, ¶ 6.)  He was taken to the FCI Milan medical department where he was examined by Rosario, who then ordered that Plaintiff be returned to his cell because he could discern nothing wrong with him.  (*Id.*)  Plaintiff asserts that he collapsed after returning to his cell and was returned to the medical department, examined again by Rosario, and then Dr. Wilson directed that Plaintiff be taken to a hospital immediately.  (*Id.* ¶ 7.)  Plaintiff asserts that he was diagnosed with a heart attack, saddle embolism and

acute recurrent thromboembolic disease, and admitted for several days of in-patient treatment in the cardiac intensive care unit.  (*Id.* ¶ 8.)

Plaintiff claims that Defendants exhibited deliberate indifference in violation of the Eighth Amendment to the U.S. Constitution "by ignoring the opinion of medical specialists who issued warnings against discontinuing Warfarin without undergoing prior medical testing" and in "refusing to treat the symptoms exhibited by the plaintiff on March 24, 2015[.]"  (DE 1, ¶¶ 10-11.)  Plaintiff asserts that he is now permanently disabled from returning to his "normal occupation," that his lifespan has been shortened, and that he is now required to take medication "for the remainder of his life due to suffering the saddle embolism," all because Dr. Malatinsky discontinued his prescription for Warfarin.  (*Id.* ¶¶ 9, 12.)  He seeks an award of $25 million in compensatory damages, as well as punitive damages and "any and other relief to which he may appear entitled, including costs, and interest."  (*Id.* ¶¶ 13-15.)

### B.    Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

On January 12, 2018, Defendants filed a motion to dismiss or, in the alternative, motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies for any claims against Defendant Rosario.  Defendants further argue that Plaintiff's allegations that Dr. Malatinsky discontinued Warfarin and that Rosario failed to identify symptoms of a saddle embolism and heart attack

do not satisfy the subjective component of an Eighth Amendment deliberate indifference claim.  Finally, Defendants contend that Plaintiff's *Bivens* claims fail because Defendants are entitled to qualified immunity.  (DE 21.)

On February 26, 2018, Plaintiff filed a response in opposition to Defendants' motion, supported by his declaration. (DE 25.)  Plaintiff's response brief primarily cites to or quotes case law regarding Eighth Amendment deliberate indifference claims, but fails to apply that law to the facts of this case or otherwise substantively address the grounds for the pending motion.  He generally asserts that Defendants' motion is premature "at this stage of the proceedings," that Defendants "failed to provide [him] with the patent [sic] care to which the situation and facts demanded" and "[t]here was no room for disagreement as to the proper course of treatment amongst physicians," and that the complaint "adequately alleges that the defendants violated known constitutional rights of the plaintiff[.]"  He further argues that exhaustion of administration is excused as to his claims against Rosario because Defendants "and/or the staff at the prison" interfered with his ability to file a grievance against Rosario.

Defendants filed a reply brief in support of their motion on March 12, 2013.  (DE 26.)  Defendants argue that Plaintiff's claims against Rosario should be dismissed because he has not exhausted his administrative remedies as to those claims, and he has failed to show that the grievance process was unavailable to

him.  Defendants also reassert their arguments that Plaintiff's deliberate indifference allegations fail to rise to an Eighth Amendment violation because he acknowledges he received medical treatment from both defendants, and that both defendants are entitled to qualified immunity.

### C.    Standards for Dispositive Motions

Defendants bring this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, motion for summary judgment pursuant to Fed. R. Civ. P. 56.

### 1.    Motions to Dismiss (Fed. R. Civ. P. 12)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S.

at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

## 2. Motions for Summary Judgment (Fed. R. Civ. P. 56)

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC*

*v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

### 3. *Pro se* Pleadings

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to

guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[1]

### D. Discussion

#### 1. Plaintiff's *Bivens* claims against Rosario should be dismissed for failure to exhaust administrative remedies

Defendants assert that Plaintiff only properly exhausted one claim—that Dr. Malatinsky was deliberately indifferent to his serious medical needs when Dr. Malatinsky discontinued Plaintiff's Warfarin prescription in December 2013. Defendants argue that Plaintiff has failed to exhaust his claims against Rosario and those claims therefore should be dismissed. (DE 21 at 20-24.) Plaintiff contends in response that he was unable to file a grievance against Rosario because staff members interfered and refused Plaintiff's attempts to file a grievance naming Rosario. (DE 25 at 14, 17-18, ¶ 5.) Defendants argue in reply that Plaintiff's

---

[1] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

claims are contradicted by his BOP administrative remedy history, and that he has failed to exhaust his administrative remedies as to Rosario. (DE 26 at 5-8.)

### a. Exhaustion generally

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 219 ("The level of detail necessary in a grievance to comply

with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").  Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court."  *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).  The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit."  *Id.* (citations omitted); *see also Woodford*, 548 US at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .").  However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint and add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim."  *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).  Moreover, "inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones*, 549 U.S. at 216.  Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA.  As such, Defendants bear the burden of proof on exhaustion.  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

### b.   Grievance Procedures at the Federal BOP

The Federal BOP Administrative Remedy Program is set forth in Program Statement 1330.18. *See also* 28 C.F.R. §§ 542.10-542.19. "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The procedure begins with informal resolution of any issue with staff, 28 C.F.R. § 542.13, and continues with initial filing of a formal grievance on Form BP-9/BP-229 within 20 days. 28 C.F.R. § 542.14. If the prisoner is not satisfied with the warden's response, he or she must appeal to the appropriate regional office on Form BP-10 within 20 days, and if unsatisfied with that response, to the General Counsel on Form BP-11 within 30 days thereafter. 28 C.F.R. § 542.15. "Appeal to the General Counsel [(Form BP-11)] is the final administrative appeal." 28 C.F.R. § 542.15.

### c. Administrative Remedy (AR) 865714 only exhausts Plaintiff's claims against Dr. Malatinsky

Defendants state that Plaintiff only fully exhausted one administrative remedy case prior to filing his complaint in this matter, AR 865714. This grievance progressed as follows:

- On April 15 2016, Plaintiff completed an "Attempt at Informal Resolution," stating that he requested medical services on March 24, 2015 "due to server [sic] chest and breathing problems," and that "[a] couple of months earlier Dr. Malitinski [sic] pulled [him] off [his] blood thinners without doing any test to see if it was safe." Plaintiff requests that "Dr. Malitinski [sic] be fired and a $25,000,000 settlement be awarded." (DE 21-8.)

- On April 20, 2016, Plaintiff's Unit Counselor issued a written response informing Plaintiff that his complaint could "not be resolved at this level." (*Id.*)

- Plaintiff initiated the formal grievance process by completing a "Request for Administrative Remedy" (BP-229 form), dated April 27, 2016, again complaining that he was taken to the hospital on March 24, 2015 "because of staff neglance [sic]. Dr. Malintski [sic] took [him] off [his] blood thinner without doing any test to see if it was safe and against [his] wishes." Plaintiff again requests that "Dr. Malintski [sic] be fired" and "for a $25,000,000 settlement." (DE 21-9.)

- The legal department at FCI Milan received Plaintiff's BP-229 form on June 15, 2016, and the Warden issued a written response denying Plaintiff's request on July 25, 2016. The Warden's response construed Plaintiff's complaint as an allegation of "'staff neglect' for removing [Plaintiff] from a blood thinner medication." The response summarized Plaintiff's medical treatment and explained that "[s]ince [Plaintiff] had completed 12 months of therapy, the Clinical Director stopped the blood thinner according to the national guidelines." (DE 21-10.)

- On September 28 2016, the North Central Regional Office received Plaintiff's BP-10 appeal dated May 11, 2016, in which he repeated his complaint of "staff neglance [sic]" and that Dr. Malatinsky took him off blood thinning medication. Plaintiff requested that Dr. Malatinsky be fired and asked for $25,000,000. (DE 21-11.)

- On October 21, 2016, the Regional Director issued a written response denying Plaintiff's appeal, for the same reasons stated by the Warden, and explaining that Plaintiff has "consistently been provided timely and appropriate medical care in accordance with Program Statement 6031.04, Patient Care, and the National Drug Formulary." (DE 21-12.)

- On December 8, 2016, Plaintiff's Central Office Administrative Remedy Appeal (BP-11) was received, in which Plaintiff complains again that Dr. Malatinsky should not have removed him from blood thinning medication, and requests that Dr. Malatinsky be fired and for an award of $25,000,000. (DE 21-13.)

- On January 6, 2017, the National Inmate Appeals Administrator issued a written response denying Plaintiff's appeal, concurring with the findings of the Warden and the Regional Director, finding no misconduct.  (DE 21-14.)

Defendants assert that, based on this grievance, Plaintiff exhausted his administrative remedies for only one claim—that Dr. Malatinsky was deliberately indifferent to Plaintiff's medical needs by discontinuing the prescription for Warfarin—but that he did not exhaust any claims against Rosario.  (DE 21 at 21-24.)  As Defendants correctly explain, this grievance did not mention Aurelio Rosario by name or title, or contain factual allegations that could be construed as a claim of deliberate indifference against Rosario for events on March 24, 2015.  Accordingly, I find that Plaintiff has failed to exhaust his administrative remedies as to any claims against Rosario through AR 865714.

### d. Plaintiff has failed to show that administrative remedies were otherwise unavailable

Plaintiff does not dispute that AR 865714 does not exhaust his administrative remedies as to Rosario.  (*See* DE 25 at 14, 25 ¶ 5.)  Instead, he contends that Defendants "actively interfered" with his attempts to exhaust his administrative remedies against Rosario, claiming that a "BP-9 was filed against defendant Rosario, but it was refused by the defendants because the policy at the prison required all facts to be submitted in a single grievance, and not split between the staff members."  (*Id.*)

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Under some limited circumstances, an inmate may be excused from completing the applicable grievance process. As the United States Supreme Court recently explained, an administrative remedy is unavailable to the plaintiff when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) the grievance process is so incomprehensible that "no ordinary prisoner can discern or navigate it," or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2015); *see also Himmelreich v. Fed. Bureau of Prisons*, No. 13-4212, 2014 WL 4413214, at *1 (6th Cir. Sept. 9, 2014) ("[W]e have excused a prisoner's lack of complete compliance [with exhaustion of administrative remedies] when the improper actions of prison officials render the administrative process functionally unavailable."). Plaintiff here argues that prison staff members "actively interfered" with his attempts to exhaust his administrative remedies as to his claims against Rosario. (DE 25 at 14.)

As Defendants properly argue in their reply brief, Plaintiff cannot sustain his claim that the administrative remedies were unavailable to him. It is undisputed that he properly filed, and the BOP properly processed the administrative claim that led to this lawsuit; and Plaintiff could have included claims against Rosario in that grievance, but did not. (See DE 26-1 at 3 ¶ 12 ("There is no BOP policy or federal regulation that prohibits an inmate from filing a grievance against multiple staff members.")) Defendants assert that Plaintiff's unsupported claim that the Federal BOP rejected his <u>BP-9</u> forms asserting a claim against Rosario is contradicted by his BOP administrative remedy history, which they attach. (DE 26 at 6.) According to that history, Plaintiff did attempt to file a the same <u>BP-10</u> form (grievance AR 862637) *directly with the BOP regional office* three times, including May 17, 2016 (862637-R1), August 15, 2016 (862637-R2), and September 9, 2016 (862637-R3). (DE 26 at 6, citing DE 26-1 at 3, ¶ 13; *id.* at 26-27.) But because this grievance did not meet any of the criteria for bypassing the Federal BOP requirements to file an initial BP-9 *at the institution*,[2] the regional

_____

[2] There are only four exceptions which allow an inmate to bypass the requirements to initially file a BP-9 at the institution and file a BP-10 or BP-11 directly with the regional or central office: (1) when the inmate clearly marks the grievance as "sensitive" and the Regional Administrative Remedy Coordinator agrees the issue is sensitive (i.e., if the inmate's safety or well-being would be placed in danger if the request became known at the institution); (2) when the inmate is appealing a decision of the Discipline Hearing Office (DHO); (3) when the inmate is appealing Control Unit placement; or (4) when the inmate is appealing Controlled Housing

office properly rejected the BP-10 on all three occasions. (DE 26-1 at 3 ¶13; *id.* at 26-27.) Defendants point out that there is no record that Plaintiff ever filed a BP-9 for grievance 862637 or appealed any of the three rejections to the BOP's central office. (DE 26 at 7; DE 26-1 at 3 ¶¶ 13-14.)

Plaintiff attaches a declaration to his response brief in support of his contention that administrative remedies were unavailable to him, but does not submit any documents or any other evidence in support of his contention that he attempted to file BP-9 forms asserting a grievance against Rosario, or that those forms were returned with a notation "that the administration would not accept two separate grievances from the same incident." (See DE 25 at 17-18, ¶ 5.) Plaintiff further *offers no details about the claims allegedly grieved and the persons against whom he filed the grievances that he alleges were refused or thrown away.* Plaintiff cannot create a genuine issue of material fact through such bare allegations, unsupported by any admissible evidence. *Lowe v. Clift*, No. 1:06-CV-076, 2007 WL 2112672, at *11 (E.D. Tenn. July 19, 2007) ("Plaintiff's reliance on bare allegations is not sufficient to create an issue of material fact or otherwise defeat a summary judgment motion."). The Sixth Circuit has noted that a plaintiff's "generalized statements" that prison officials refused to process grievance forms "are insufficient to create a genuine dispute of material fact as to whether the

Status placement. (DE 26-1, ¶ 9, citing 28 C.F.R. § 542.14(d).) None of those exceptions apply in this case.

administrative process was available to him[.]" *See Belser v. James,* No. 16-2578, 2017 WL 5479595, at *2 (6th Cir. June 6, 2017) (citing in part *Arbuckle v. Bouchard*, 92 F. App'x 289, 291 (6th Cir. 2004) ("[Plaintiff's] bald assertion that [the grievance coordinator] refused to give him grievance forms is not enough to excuse the complete absence of evidence that he attempted to exhaust his administrative remedies for the many claims he raised in his district court complaint.")); *see also El-Hanini v. Fed. Bureau of Prisons*, No. 5:17-256-DCR, 2018 WL 506226, at *2 (E.D. Ky. Jan. 22 2018) (plaintiff's claims that prison officials refused to give him BP-8, 9 forms is insufficient to excuse his failure to comply with the exhaustion requirement).

In light of the evidence presented by Defendants, who bear the burden of proof, and the lack of evidence presented by Plaintiff, the circumstances are not such that "the evidence is susceptible of different interpretations or inferences by the trier of fact," which would preclude summary judgment in favor of the party bearing the burden of proof. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). Plaintiff has failed to establish that the administrative remedy process was a dead end, or opaque, or that prison officials thwarted Plaintiff from pursuing his claim. Rather, Defendants have established that the prison officials properly rejected grievance AR 862637 because the grievance did not meet the criteria for bypassing the requirement to file an initial BP-9 at the institution, and Plaintiff did not appeal

any of the three rejections to the BOP's central office or otherwise pursue the proper avenue. (DE 26-1 at 3 ¶¶ 13-14.)  Accordingly, Plaintiff's claims against Rosario should be dismissed for failure to exhaust administrative remedies.

### 2. Plaintiff's Eighth Amendment claims fail as a matter of law

Plaintiff asserts a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  "The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'"  *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment."  *Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification."  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citing *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)).

To support a claim of deliberate indifference under the Eighth Amendment, a plaintiff must satisfy two components:  an objective component, and a subjective component.  *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (citation omitted).  "Satisfying the objective component ensures that the

alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant … acted with a sufficiently culpable state of mind.'" *Quigley v. Toung Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)). To satisfy the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* (citations omitted). A sufficiently serious need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004).

To satisfy the subjective component of a deliberate indifference claim and show that the defendant had a sufficiently culpable state of mind, a plaintiff must show that "'the official knows of and disregards' the substantial risk of serious harm." *Villegas*, 709 F.3d at 569 (citation omitted). The plaintiff need not prove, however, "that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Instead, a plaintiff must show that: (1) the defendant "subjectively perceived facts from which to infer substantial risk to the [plaintiff]," (2) the defendant "did in fact draw that inference," and (3) the defendant "then disregarded that risk." *Quigley*, 707 F.3d at 681 (citations omitted). However, a difference in judgment between an

inmate and prison medical personnel regarding what constitutes appropriate medical treatment does not give rise to a constitutional violation. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Defendants argue that Plaintiff has failed to allege viable constitutional claims against Dr. Malatinsky and Rosario for deliberate indifference to his medical needs. (DE 21 at 24-32.)[3]  Plaintiff's response brief generally cites to and quotes case law, but fails to apply that law to the facts of this case or otherwise meaningfully discuss the complaint's allegations or any other facts relevant to Plaintiff's deliberate indifference claims. (DE 25.)

### a.    Plaintiff's allegations against Dr. Malatinsky

Plaintiff alleges that Dr. Malatinsky ignored the warning of medical specialists when he discontinued Plaintiff's prescription for Warfarin in December 2013 without undergoing prior medical testing and thus was deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment. (DE 1, ¶ 11.) Defendants here do not dispute that Plaintiff's allegations that he suffered from a pulmonary embolism and thromboembolic disease shortly before he arrived at FCI Milan in 2013, that he was prescribed Warfarin for treatment of those

---

[3] Plaintiff also asserts that he has been "subjected to punishment not authorized by the judgment of conviction" in violation of the Fifth and Sixth Amendments[.]" (DE 1, ¶ 10.)  However, these bare allegations contain no factual support and thus fail to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted).

conditions, and that he risked suffering pulmonary problems without Warfarin, are sufficient to satisfy the objective component of his Eighth Amendment claim. (DE 21 at 28.)  However, Defendants argue that Plaintiff's allegations regarding Dr. Malatinsky fail to satisfy the subjective component of this claim for two reasons: (1) Plaintiff does not allege what the recommendations of his specialists were in December 2012, or whether Dr. Malatinsky was aware of those recommendations; and (2) the record demonstrates that Plaintiff received attention and that he simply disagrees with treatment decisions made by the medical staff, and a disagreement over treatment does not rise to the level of a constitutional violation.  (DE 21 at 28-29.)

The Court agrees that Plaintiff here essentially disagrees with Dr. Malatinsky's medical judgment in discontinuing Plaintiff's prescription for Warfarin in December 2013.  Plaintiff alleges in his complaint that he objected to discontinuing Warfarin and that unidentified medical specialists had warned him not to discontinue taking Warfarin without undergoing tests.  (DE 1, ¶ 5.)  Plaintiff however has provided no documentation from those specialists setting forth that warning, much less allege that he showed any such documentation to Dr. Malatinsky before he discontinued the prescription.  On the other hand, Dr. Malatinsky has provided a legitimate medical reason for discontinuing the medication—that he reviewed Plaintiff's medical history and followed BOP

guidelines regarding the length of time a patient should be on Warfarin. (DE 21-4, ¶ 6, citing DE 21-5.) In addition, medical records provided by Defendants show that Plaintiff continued to be evaluated and treated by various physicians, including Dr. Malatinsky, and that he did not report any issues related to his pulmonary embolism or other complaints regarding discontinuance of Warfarin. (DE 21-3 at 1-10; DE 21-6 at 49-50.) That Plaintiff, or even another doctor, might disagree with Dr. Malatinsky's decision to discontinue Warfarin is not the point. There is no dispute that Dr. Malatinsky provided treatment to Plaintiff starting in December 2013, and that Dr. Malatinsky made a medical decision in the course of that treatment to discontinue Warfarin. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotations marks omitted); *see also White v. Corr. Med. Servs. Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004) ("Any perceived deficiencies in his treatment [and the doctor's decision to discontinue plaintiff's previous course of treatment] amounted to only negligence or a difference of opinion."). Thus, Plaintiff's Eighth Amendment claim against Dr. Malatinsky fails because Dr. Malatinsky made a medical decision in the course

of providing treatment to Plaintiff, and a mere difference of opinion between a prisoner and a prison doctor does not rise to deliberate indifference.

### b. Plaintiff's allegations against Rosario

Assuming, *arguendo*, that Plaintiff had properly exhausted his claim against Rosario, his Eighth Amendment deliberate indifference claim should nevertheless be dismissed. Defendants concede, as they did above, that Plaintiff has satisfied the objective prong of an Eighth Amendment claim. Defendants argue, however, that Plaintiff's allegations against Rosario fail to satisfy the subjective component of an Eighth Amendment claim because Plaintiff admits that: (1) when he first went to the medical department, Rosario was not aware of any symptoms of concern; (2) that Rosario "could discern nothing was wrong with the plaintiff;" and, (3) that when he returned to Rosario a second time, after he climbed the stairs to a second tier unit, had a heart attack, and returned to the medical department, he admits Rosario contacted a doctor who ordered BOP staff to take Plaintiff to the hospital immediately. (DE 1, ¶¶ 6-7.) Defendants correctly assert that these allegations reflect medical treatment, sound (at best) in negligence, and do not state a constitutional violation. *See Jerauld ex rel. Robinson v. Carl*, 405 F. App'x 970, 976 (6th Cir. 2010) (citation omitted) ("Deliberate indifference requires a degree of culpability greater than mere negligence."); *Jennings v. Al-Dabagh*, 275 F.Supp.2d 863, 870 (E.D. Mich. 2003) ("[T]he fact that a prisoner disagrees with a course of

treatment that was prescribed, or even that the treatment he did receive was negligently administered, does not rise to a constitutional violation."). As stated above "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n.5.

Accordingly, Plaintiff has failed to state a cognizable Eighth Amendment claim against Rosario, and his complaint should be dismissed.

### 3.     Qualified Immunity

Both Defendants Dr. Malatinsky and Rosario assert that they are entitled to qualified immunity. The Court conducts a two-step analysis in assessing qualified immunity. First, the Court determines whether "the violation of a constitutional right has occurred" and second, whether the "constitutional right at issue was clearly established at the time of defendant's alleged misconduct." *Grawey v. Drury,* 567 F.3d 302, 309 (6th Cir.2009).

Dr. Malatinsky and Rosario are entitled to qualified immunity under the first step of the analysis. For the reasons stated above—even assuming the existence of a clearly established constitutional right—Plaintiff has failed to establish that Dr. Malatinsky and Rosario violated the right in question. Accordingly, in addition to the other reasons given in this report for summary judgment to be granted, it is

recommended that Dr. Malatinsky and Rosario are entitled to qualified immunity on Plaintiff's claims against them.

### E.    Conclusion

For the reasons stated herein, it is recommended that the Court **GRANT** Defendants' motion to dismiss or, in the alternative, motion for summary judgment (DE 21), and **DISMISS** Plaintiff's claims against Defendants **with prejudice.** Further, Defendants' motion to extend time to answer (DE 18) is **DENIED as moot**.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: May 29, 2018                    s/Anthony P. Patti
                                       Anthony P. Patti
                                       UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on May 29, 2018, electronically and/or by U.S. Mail.

                                       s/Michael Williams
                                       Case Manager for the
                                       Honorable Anthony P. Patti